**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DAVID PERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Civil Action No. 21-cv-11367-AK |
| ) | |
| TOWN OF READING, JOSEPH ROSS, ) | |
| JACK LOUIE, MICHAEL FITZGERALD ) | |
| MICHELLE HALLORAN, PATRICK ) | |
| JOHNSON, and ROBERT MCHUGH, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

**A. KELLEY, D.J.**

Plaintiff David Perry ("Perry") initiated this action against Defendants Town of Reading, Joseph Ross ("Ross"), Jack Louie ("Louie"), Michael Fitzgerald ("Fitzgerald"), Michelle Halloran ("Halloran"), Patrick Johnson ("Johnson"), and Robert McHugh ("McHugh"), alleging various civil rights violations and intentional infliction of emotional distress. Perry claims that Ross, Louie, and Johnson, members of the Massachusetts State Police, and Fitzgerald, McHugh, and Halloran, members of the Town of Reading Police Department ("RPD"), mishandled their criminal investigation of Perry while failing to prosecute another individual who provided evidence against Perry.

Pending before the Court are several motions to dismiss and a motion for leave to amend. The Town of Reading, Fitzgerald, Halloran, and McHugh (the "Reading Defendants") filed a Motion to Dismiss [Dkt. 20 ("Reading Motion")], arguing primarily that Perry has failed to state a claim for relief because his claims are untimely and, regardless, are barred by the "favorable

1

termination rule" established in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).  [Reading Motion at 2].  Shortly thereafter, Perry filed a Motion for Leave to File a Second Amended Complaint [Dkt. 27 ("Motion to Amend")], in which he avers to have addressed the issues raised by the Reading Motion.  Johnson [Dkt. 50], Ross [Dkt. 52], and Louie [Dkt. 55] have also filed Motions to Dismiss, presenting largely the same arguments as the Reading Defendants in addition to qualified immunity defenses.  For the following reasons, the Court **GRANTS** the Reading Defendants' Motion to Dismiss; **GRANTS** Johnson's Motion to Dismiss; **GRANTS** Ross's Motion to Dismiss; **GRANTS** Louie's Motion to Dismiss; and **DENIES** Perry's Motion to Amend.

## I.    Background

Unless otherwise noted, the facts are presented as alleged in Perry's First Amended Complaint.  [<u>See</u> Dkt. 5 ("Amended Complaint")].  Perry owned and operated Recovery Educational Services ("RES"), a sober home, in Roxbury, MA, from 2006 to 2018.  [<u>Id.</u> at ¶¶ 9, 78].  At that time, Perry was also a licensed attorney with a law office housed in the same building as RES.  [<u>Id.</u> at ¶¶ 51, 78].  From October 2012 through June 2014, Justin Kady ("Kady") resided at RES.  [<u>Id.</u> at ¶ 10].  Kady socialized with Perry at Perry's condominium on November 25, 2016.  [<u>Id.</u> at ¶ 11].  On November 30, 2016, Perry arrived home and found Kady in the act of breaking into and robbing Perry's condominium.  [<u>Id.</u> at ¶ 13].  Perry reported the incident to RPD, and an officer responded and took photographs of the scene.  [<u>Id.</u> at ¶¶ 15-16].  A criminal complaint was filed against Kady, charging him with breaking and entering and larceny, and a clerk's magistrate hearing was scheduled for January 24, 2017.  [<u>Id.</u> at ¶¶ 19-20].

Kady then contacted Fitzgerald, the RPD Prosecutor, to deny that he broke into Perry's home and to make several allegations of criminal activity against Perry.  [<u>Id.</u> at ¶ 21].  Kady

failed to appear at the magistrate hearing, which was continued to the following month. [Id. at ¶ 23]. Shortly thereafter, Kady participated in several interviews with Fitzgerald and then-Assistant Attorney General Kristyn Dusel ("AAG Dusel"), in which he accused Perry of multiple crimes, which prompted a joint investigation into Perry. [Id. at ¶¶ 24-26]. Kady lied multiple times during these interviews. [Id. at ¶¶ 24, 26]. The criminal complaint against Kady was dismissed for lack of probable cause at the clerk's magistrate hearing on March 7, 2017. [Id. at ¶ 29]. The photographs taken of Perry's home on the evening of Kady's break-in were not presented at the probable cause hearing, and Halloran destroyed the photographs on March 8, 2017. [Id. at ¶¶ 28-30].

From March 29, 2017, through November 14, 2017, approximately eighteen search warrants related to Perry were requested and issued. [Id. at ¶ 53]. Perry was indicted on May 17, 2017, and he was arrested on November 14, 2017. [Id. at ¶¶ 52, 60]. A search team, including Johnson, Ross, and Louie, arrived at the RES buildings to secure and search both properties shortly after Perry's arrest.[1] [Id. at ¶ 64]. During the search, several of the defendants entered Perry's law office, which was located on the RES premises, and seized electronic devices. [Id. at ¶¶ 78-88]. A search team, including Fitzgerald, also seized legal defense files from Perry's home, including files related to cases in which Perry was the named defendant. [Id. at ¶¶ 91-98]. The legal files pertaining to Perry were left on his patio on November 16, 2017, thirty-six hours after the search. [Id. at ¶¶ 96-98].

Kady testified at the grand jury proceedings against Perry on December 21, 2017. [Id. at ¶ 33]. That same day, Kady told Johnson, McHugh, and AAG Dusel that he had broken into and

---

[1] RES occupied adjacent buildings at 2597 Washington Street and 2599 Washington Street in Roxbury, MA. [Amended Complaint at ¶ 64].

robbed Perry's home as Perry had alleged.  [Id. at ¶ 34].  Perry was not informed of this exchange.  [Id. at ¶ 36].  On January 17, 2018, Perry requested the formal reports, witness statements, and photographs related to the investigation of Kady's break-in and robbery of Perry's home.  [Id. at ¶ 44].  Perry received a response on January 19, 2018, which informed Perry that some of the records requested were no longer in the possession, custody, or control of the RPD.  [Id. at ¶ 45].  On May 8, 2018, Perry learned that the photographs of the scene were never presented at Kady's probable cause hearing and were destroyed the day after.  [Id. at ¶ 49].  On February 23, 2019, AAG Dusel filed the Commonwealth's "Notice of Discovery" for Perry's criminal case, which noted that a conditional offer had been extended to Kady regarding his break-in and robbery of Perry's home.  [Id. at ¶¶ 106-07].  On October 2, 2019, Perry pleaded guilty to thirty-four charges, including withholding evidence, conspiracy to violate drug law, sexual conduct for a fee, and drug possession.  [Dkt. 21-1 at 10-12]; see Commonwealth v. Perry, No. 1884-cr-00339 (Mass.).

Perry alleges that he "pled guilty to the indictments as charged given the negative impact the Defendants' wrongful acts had upon Perry's life and upon his ability to defend himself against the totality of all of the wrongful conduct of the Defendants."  [Amended Complaint at ¶ 113].  Perry also states that he "would not have pled guilty had Kady's prosecution been properly pursued, that inculpatory evidence of Kady's crimes been preserved, [had] the promises/inducements/rewards offered to Kady and others been disclosed," and had the defendants' "other wrongfully [sic] acts," including "improperly searching and seizing his personal properly and legal files," not caused "extreme pressure and duress."  [Id. at ¶ 114].[2]

---

[2] Perry omits these statements from the Proposed Second Amended Complaint.  [See Dkt. 27-1].

## II.     Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and actionable as a matter of law.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements.  Id.  Factual allegations must be accepted as true, while legal conclusions are not entitled to credit.  Id.  A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable.  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  Dismissal is appropriate when the complaint fails to allege a "plausible entitlement to relief."  Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).  When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court is generally limited to "the complaint, documents attached to it, and documents expressly incorporated into it," Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71-72 (1st Cir. 2014), though the Court may also consider "matters of public record[] and other matters susceptible to judicial notice," Newton Covenant Church v. Great Am. Ins. Co., 956 F.3d 32, 35 (1st Cir. 2020).

A party seeking to amend a complaint more than once or more than twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f) must seek leave of the

court to do so.  Fed. R. Civ. P. 15(a).  When deciding a motion for leave to amend, the Court's task is to determine whether "justice so requires" that leave be granted, such that the Court must "examine the totality of the circumstances" and "exercise its informed discretion in constructing a balance of pertinent considerations."  Palmer v. Champion Mortg., 465 F.3d 24, 30-31 (1st Cir. 2006) (citations omitted).  Leave to amend may be denied in "appropriate circumstances," such as "undue delay, bad faith, futility, and the absence of due diligence on the movant's part."  Id. (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  Amendment is "deemed futile when the proposed amended complaint would fail to withstand a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6).  Crowl v. M. Chin Realty Tr., 607 F. Supp. 2d 245, 246 (D. Mass. 2009) (citing Hatch v. Dep't for Child., Youth & Their Fams., 274 F.3d 12, 19 (1st Cir. 2001)).

## III.    Discussion

Perry brings his Fourth and Fourteenth Amendment claims pursuant to 42 U.S.C. § 1983. The Amended Complaint asserts that Johnson, Louie, Ross, and Fitzgerald violated Perry's Fourth Amendment rights by failing to perform a "reasonable and/or authorized search/seizure of Perry's law office, RES, and/or Perry's home."  [Amended Complaint at ¶ 118].  Perry also brings a Fourteenth Amendment due process claim against Johnson, McHugh, Fitzgerald, and Halloran, alleging they destroyed exculpatory or impeachment evidence that should have been available to Perry and failed to prosecute Kady in violation of Perry's civil rights.  [Id. at ¶¶ 128-32].  Perry also brings related intentional infliction of emotional distress charges against the defendants and a claim for inadequate training and supervision against the Town of Reading. [Id. at ¶¶ 135-43].

The defendants argue that Perry's claims must be dismissed because they are beyond the applicable three-year statute of limitations; are barred by the Heck doctrine; and otherwise fail to

state a claim for relief.  Johnson, Ross, and Louie have also asserted qualified immunity defenses.  Perry has attempted to address the defendants' arguments by filing a Motion to Amend, attaching his Proposed Second Amended Complaint [Dkt. 27-1 ("Proposed Second Amended Complaint")].  The allegations in the Proposed Second Amended Complaint are largely the same as those in the Amended Complaint.  However, Perry adds two paragraphs claiming that he learned of many of the details related to Kady's prosecution after requesting RPD records, which he received on May 8, 2018, and he did not know some of the facts related to the searches at RES, his law office, and his residence until July 26, 2018.  [Id. at ¶¶ 113-14].  Perry also alters his Fourteenth Amendment claim to include a reference to equal protection and conflict-of-interest.  [Id. at ¶¶ 128-34].  The Reading Defendants have opposed the Motion to Amend [see Dkt. 35], while Johnson, Ross, and Louie reference the Motion to Amend in the memoranda to their Motions to Dismiss [see Dkts. 51, 53, 56].

### A.  Count IA: Illegal Search and Seizure (Johnson, Louie, Ross, and Fitzgerald)

Perry alleges that Johnson, Louie, Ross, and Fitzgerald violated his Fourth Amendment rights by searching RES and Perry's law office and home without first serving a valid search warrant, exceeding the scope of the warrant, and making false statements on the warrant applications.  [Amended Complaint at ¶¶ 119-27].  Perry's allegations focus on searches of these properties that occurred on November 14, 2017.  [See id. at ¶¶ 64-97].  The defendants argue that these claims are barred by the statute of limitations and the Heck doctrine.

### 1.  Statute of Limitations

Claims brought pursuant to Section 1983 are subject to a three-year statute of limitations. Nieves v. McSweeney, 241 F.3d 46, 51 (1st Cir. 2001) (noting that Section 1983 does not contain a statute of limitations and a federal court "ordinarily must borrow the forum state's

limitation period governing personal injury causes of action").  Because Perry initiated this

action on August 20, 2021, only claims based on events occurring after August 20, 2018, are

timely.  [See Dkt. 1].  As alleged in the Amended Complaint, the searches occurred prior to that

date—indeed, at latest, by November 14, 2017—making Perry's Fourth Amendment claim

untimely.  Perry responds that the Massachusetts Supreme Judicial Court tolled all civil statutes

of limitations from March 17, 2020, through June 30, 2020, due to the COVID-19 crisis (the

"SJC Order"), which requires the Court here to extend the three-year statute of limitations for the

corresponding number of days of that tolled period.  [Dkt. 26 ("Opposition") at 3].  According to

Perry, any claims that accrued on or after May 5, 2018, are timely pursuant to the SJC Order.[3]

[Id.].  This does not save Perry's Fourth Amendment claim as presented in the Amended

Complaint.  The searches occurred on November 14, 2017, well before May 5, 2018. The Court

therefore grants the defendants' Motions to Dismiss as to Perry's Fourth Amendment claim.

Perry attempts to remedy this issue by adding allegations to the Proposed Second

Amended Complaint, stating that he did not learn the details of the content, scope, and

limitations of the search warrants at issue until July 26, 2018.  [Proposed Second Amended

Complaint at ¶ 114; see id. at ¶¶ 53, 55-56, 70, 75, 77, 82-84, 91-92, 94, 96, 98].  If Perry's

Fourth Amendment claims accrued as of July 26, 2018, when he became aware of these

specifics, they are timely under the SJC Order.  If not, Perry's Proposed Second Amended

Complaint and Motion to Amend, as they relate to his Fourth Amendment claim, are futile.

A Section 1983 claim accrues when the plaintiff has a "complete and present cause of

action," such that "all of the acts comprising the specific constitutional violation have been

---

[3] The defendants do not present any substantive arguments that the SJC Order does not apply.
[See Dkt. 35 at 5; Dkt. 51 at 7-8; Dkt. 53 at 6; Dkt. 56 at 7].

completed." Ouellette v. Beaupre, 977 F.3d 127, 136 (1st Cir. 2020) (citing McDonough v. Smith, 139 S. Ct. 2149, 2155 (2019)).  Accrual occurs "at the moment the plaintiff knows, or has reason to know, of the injury that is the basis for the claim," Nieves, 241 F.3d at 52 (noting that "the question of when a cause of action accrues in a civil rights case is a matter of federal law"), or "when facts supportive of a civil rights action are or should be apparent to a reasonably prudent person similarly situated," Rodriguez Narvaez v. Nazario, 895 F.2d 38, 41 n.5 (1st Cir. 1990).  That is, a Section 1983 action accrues when the plaintiff has "knowledge of the facts underlying his cause of action sufficient to put him on inquiry notice" of a possible claim, and the plaintiff has a "duty to exercise reasonable diligence to investigate and perfect his rights within the three years the statute allowed him following the wrongful conduct." Marrapese v. Rhode Island, 749 F.2d 934, 937-38 (1st Cir. 1984).

Although Perry argues that his Fourth Amendment claims did not accrue until July 26, 2018, when he discovered further details about the search warrants, "[a] § 1983 claim based on an allegedly illegal search generally accrues on the date on which the search occurred."  Allen v. Town of E. Longmeadow, No. 17-cv-30041-MGM, 2018 WL 1152098, at *10 (D. Mass. Feb. 9, 2018); see Meza v. Schaff, No. 11-cv-00483-JD, 2012 WL 2628045, at *3 (D.N.H. Mar. 21, 2012) (citing Medina v. Toledo, 718 F. Supp. 2d 194, 204 (D.P.R. 2010)) (same).  Perry admits that he "knew the searches were conducted on the days they occurred."  [Opposition at 9; Dkt. 26-1 at ¶ 6].  Here, that day is November 14, 2017, which is well before May 5, 2018, the earliest date claims would be considered timely.  Only "unusual circumstances" would dictate a different accrual date, and the Court can identify no such circumstances here.  See Allen, 2018 WL 1152098, at *10.

Perry relies on the fact that he "did not see any affidavits, returns or related search warrant documents until July 26, 2018," to aver that his Fourth Amendment claims did not accrue until that date.[4]  [Opposition at 9; Dkt. 26-1 at ¶ 6; see Proposed Second Amended Complaint at ¶ 114].  This is insufficient to save his Fourth Amendment claim, as Perry was aware of several facts prior to that date that gave him knowledge, or reason to know, of any Fourth Amendment injury against him.  First, Perry states in the Second Amended Complaint that the "search warrants . . . were formally served and left for Perry's review when he returned to the properties."  [Proposed Second Amended Complaint at ¶ 67].  Second, as alleged in the Second Amended Complaint, Perry also knew that the search team searched the RES properties prior to the arrival of the warrants.  [See id. at ¶¶ 64-69, 71-74].  Third, Perry knew his law office, located in the RES property, had been searched on November 14, 2017.  [See id. at ¶¶ 76, 78-81, 85-87].  In fact, he acknowledges specific items, including a computer and business card, were taken from his law office.  [See, e.g., Dkt. 61 at 7].  Fourth, Perry states that two personal legal defense files, which he claims were illegally seized during the search of his residence, were returned and discovered "blowing in the rain and wind around Perry's balcony terrace and front yard" on November 16, 2017.  [Proposed Second Amended Complaint at ¶¶ 96-97].  These facts—all of which Perry knew well before he learned more details about the search warrants on July 26, 2018—were enough to provide Perry with "ample reason to know of the injury then and

---

[4] Perry states that "the affidavit submitted to obtain the search warrant is specific to RES (Recovery Educational Services) located at 2599 Washington Street and does not seek to search the Law Office of David Perry."  [Dkt. 61 at 2].  An addendum to the affidavit lists the "office and any common areas located inside of 2599 Washington St" as the "[p]lace to be searched."  [Dkt. 64 at 3].  It also explains that "Recovery Education Services owns and operates Sober Housing Units at 2597, 2599, and 2601 Washington Street, among others."  [Id.].  Although the description of the property to be searched in the affidavit does not specifically name Perry's law office, it also does not necessarily restrict the search of 2599 Washington Street to areas devoted to RES.

there" when the searches occurred in November 2017.[5] Nieves, 241 F.3d at 52.  Accordingly,

Perry's Fourth Amendment claim, as presented in his Proposed Second Amendment Complaint,

is futile.

### 2.  **Heck** Doctrine

In his Amended Complaint, Perry states that he "would not have pled guilty had . . . the

other wrongfully [sic] acts set forth above not [been] committed by the Defendant's [sic] in

violating Perry's civil rights, including but not limited to, improperly searching and seizing his

personal property and legal files."[6]  [Amended Complaint at ¶ 114].  This speaks directly to the

Supreme Court's decision in Heck v. Humphrey, which bars Section 1983 claims where the

success of the plaintiff's civil claim would "necessarily imply the invalidity" of the plaintiff's

criminal conviction or sentence and that conviction or sentence has not been reversed or

otherwise set aside:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness would render a
> conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or
> sentence has been reversed on direct appeal, expunged by executive order, declared
> invalid by a state tribunal authorized to make such determination, or called into question
> by a federal court's issuance of a writ of habeas corpus . . . .  A claim for damages
> bearing that relationship to a conviction or sentence that has *not* been so invalidated is not
> cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the

---

[5] Although Perry states that he had "no actual knowledge (beyond the obvious and readily used
items) as to what was taken from his home, business, or law office" [Opposition at 9-10],
identification of every single item seized to a high degree of particularity is not required for a
Fourth Amendment claim to accrue.  See Mallard v. Potenza, No. 94-cv-00223, 2007 WL
4198246, at *5 (E.D.N.Y. Nov. 21, 2007) (noting that a claim for an illegal search and seizure
accrues "when the property is taken (so long as the plaintiff knows or has reason to know of the
taking), because that is when the plaintiff's rights have been intruded upon and the time at which
he has a complete and present cause of action").  Perry identifies at least two items, a computer
and business card, that were taken from his law office that day.  [See, e.g., Dkt. 61 at 7].  The
identification of those two seized items sufficed to put Perry on notice of the search and seizure.

[6] Perry claims that he learned all the details of the searches by July 26, 2018.  He pleaded guilty
to thirty-four criminal charges in October 2019.  Thus, Perry did know of the acts alleged, and he
still pleaded guilty.

district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. at 486-87. While it is true that alleged Fourth Amendment violations do not necessarily imply the invalidity of a conviction or sentence, see id. at 487 n.7, Perry himself admits the role the challenged searches here had on his criminal conviction—he would not have pleaded guilty had the searches not occurred—and his claim therefore attacks the validity of his guilty pleas. See id. Because Perry's conviction has not been reversed, expunged, declared invalid, or called into question by writ of habeas corpus, Heck bars Perry's Fourth Amendment claim, which is brought pursuant to Section 1983, as set forth in the Amended Complaint.

Perry attempts to rectify this situation by omitting from the Proposed Second Amended Complaint his admission that he would not have pleaded guilty had the allegedly unlawful searches and seizures not occurred. Perry's attempt to reframe his attack on the validity of the searches—and therefore his criminal pleas—remains futile. See Mangual v. City of Worcester, 285 F. Supp. 3d 465, 472-73 (D. Mass. 2018) (finding that Heck barred the plaintiff's Section 1983 Fourth Amendment claim where the plaintiff pleaded guilty to criminal charges of drug possession with intent to distribute and the drugs were discovered during the challenged search). In any event, as explained above, Perry's Fourth Amendment claim is barred by the statute of limitations regardless of Heck.[7]

---

[7] Because the Court has determined that the statute of limitations and Heck doctrine bar Perry's Fourth Amendment claim, it need not address the qualified immunity defenses asserted by Johnson, Ross, and Louie.

**B.  Count IB:  Due Process (Johnson, McHugh, Fitzgerald, and Halloran)**

In his Amended Complaint, Perry alleges Johnson, McHugh, Fitzgerald, and Halloran violated his Fourteenth Amendment due process rights in numerous ways.  First, he claims Fitzgerald and Halloran destroyed "exculpatory or impeachment evidence" regarding Kady's crimes that should have been made available to Perry.  [Amended Complaint at ¶ 129].  Second, Perry maintains that Johnson, McHugh, and Fitzgerald failed to prosecute Kady, which violated Perry's civil rights.  [Id. at ¶ 131].  Third, Perry contends that Fitzgerald failed to disclose to Perry evidence of promises, awards, and inducements made to Kady.[8]  [Id. at ¶ 132].

A prerequisite to recovery under Section 1983 is that the plaintiff establish that the defendants deprived him of a right secured by the Constitution and the laws of the United States. Martinez v. California, 444 U.S. 277, 284 (1980).  The threshold question, then, is whether Perry's Fourteenth Amendment claim involves the deprivation of a protected right.  The underlying tenor of Perry's Fourteenth Amendment claim is that the defendants' failure to prosecute Kady somehow violated Perry's civil rights.  [See Opposition at 2].  The Court is not aware of any law—and Perry has not pointed to any—providing that an individual has a protected interest in the prosecution of another.  Everything the Court has found suggests that a plaintiff "does not have a protected interest under the due process clause to an adequate investigation" of someone else.  Ortiz v. Ortiz, No. 19-cv-01416, 2019 WL 5682832, at *5 (E.D. Cal. Nov. 1, 2019) (dismissing a due process claim where the plaintiff alleged the police should

---

[8] Perry omits this allegation in Count IB in the Proposed Second Amended Complaint. Regardless, the duty to disclose promises and inducements made to witnesses in a criminal trial is on the prosecutor, not the police, and Perry has no claim against Fitzgerald.  See Kyles v. Whitley, 514 U.S. 419, 437-38 (1995) ("But the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached.").

have investigated a crime committed by another individual); see <u>Gini v. Las Vegas Metro. Police</u> <u>Dep't</u>, 40 F.3d 1041, 1045 (9th Cir. 1994) ("The police have no affirmative obligation to investigate a crime in a particular way or to protect one citizen from another even when one citizen deprives the other of liberty or property."). That is, the "benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." <u>Town of Castle Rock v. Gonzalez</u>, 545 U.S. 748, 768 (2005).

The "failure of police officers to conduct an adequate investigation is not sufficient to state a civil rights claim under Section 1983 'unless there was another recognized constitutional right involved.'" <u>Williams v. City of Boston</u>, 771 F. Supp. 2d 190, 200 (D. Mass. 2011) (citation omitted); see <u>Thibeault v. Brown</u>, No. 12-cv-10333-PBS, 2012 WL 1865834, at *4 (D. Mass. May 21, 2012) ("There is no constitutional right to a police investigation, adequate or otherwise."). The "alleged deficiencies" in the defendants' investigation of Kady, "without more, are not actionable." <u>Williams</u>, 771 F. Supp. 2d at 200. Perry has failed to identify any such constitutionally protected right regarding the defendants' alleged "fail[ure] to present inculpatory evidence, prosecute and/or press charges against Kady to protect Perry's civil rights,"[9] and any claim based solely on the defendants' decision not to prosecute Kady must be dismissed. [See Amended Complaint at ¶ 131]. To the extent Perry claims that the defendants' failure to prosecute Kady violated his constitutional rights because they destroyed or failed to disclose "exculpatory or impeachment evidence," that argument should have been raised during

---

[9] Any attempt to assert a malicious prosecution claim fails. Malicious prosecution requires "termination of the proceeding in favor of the accused." <u>Nieves</u>, 241 F.3d at 53. Such is not the case here.

Perry's criminal proceedings or through or post-conviction motions.  [See id. at ¶¶ 129-30].

Moreover, the statute of limitations and Heck doctrine bar such a claim.

### 1.  Statute of Limitations

All of the events related to Kady's prosecution—or lack therefore—occurred in 2016 and

2017, concluding in March 2017 when the charges against Kady were dropped for want of

probable cause and the photographs of the alleged break-in were destroyed.  [See id. at ¶¶ 29-

30].  The latest date associated with Kady is December 21, 2017, when he testified before the

grand jury for Perry's criminal case and attended an interview with AAG Dusel, Johnson, and

McHugh, where Kady allegedly confessed that he broke into Perry's home as reported in

December 2016.  [Id. at ¶¶ 33-34].  This date is well before May 5, 2018, the statute of

limitations boundary Perry claims is applicable here.  The Court therefore grants the defendants'

Motions to Dismiss as to Perry's Fourteenth Amendment due process claim.

As with his Fourth Amendment claim, Perry attempts to rectify issues with the statute of

limitations by alleging in his Proposed Second Amended Complaint that he did not learn of the

dismissal of the criminal case against Kady, the failure to introduce the break-in photographs at

Kady's probable cause hearing, and the destruction of the photographs until May 8, 2018, which

would make claims based on these events timely.  [Second Amended Complaint at ¶ 113; see id.

at ¶¶ 28-30].  However, Perry also acknowledges that he requested documents related to the

Kady investigation in January 2018, and on January 19, 2018, he learned that some of the

records related to the Kady investigation were no longer in RPD's possession, custody, or

control.  [Id. at ¶¶ 44-45].  Perry provides a letter he received from the RPD, dated May 8, 2018,

confirming as much: "On 01/19/2018 the Department indicated in the original response that the

'photographs associated with this incident have been destroyed as a result of the case being

adjudicated.'"  [Dkt. 26-1 at 4].  As such, Perry knew, or had reason to know, of the destruction

of the photographs and the result of Kady's criminal case no later than January 19, 2018—well

before May 5, 2018.  See Nieves, 241 F.3d at 52.  Perry's due process claim, as alleged in the

Proposed Second Amended Complaint, is futile.

### 2.  **Heck** Doctrine

Even if the statute of limitations did not bar Perry's due process claim, the destruction of

the "exculpatory or impeachment evidence" in the Kady proceedings is not, by itself, a violation

of Perry's civil rights.  [See Amended Complaint at ¶¶ 128-29].  As explained above, it may be a

violation of Perry's rights only if it involves "another recognized constitutional right."  See

Williams, 771 F. Supp. 2d at 200.  Perry's references to the "exculpatory or impeachment

evidence" are, in essence, an attempt to assert a Brady violation in his criminal proceedings.[10]

See Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that the prosecution violates due

process when it suppresses material evidence favorable to the accused); see also Giglio v. United

States, 405 U.S. 150, 154 (1972) (concluding that certain impeachment information falls within

the Brady rubric).  Such a claim falls squarely within the type of Section 1983 claims barred by

Heck.  See Skinner v. Switzer, 562 U.S. 521, 536 (2011) ("[A] Brady claim, when successful

postconviction, necessarily yields evidence undermining a conviction: Brady evidence is, by

definition, always favorable to the defendant and material to his guilt or punishment. . . .

Accordingly, Brady claims have ranked within the traditional core of habeas corpus and outside

the province of § 1983.");  Johnson v. New York City Police Dep't, 651 Fed. App'x 58, 60 (2d

Cir. 2016) ("Brady-based § 1983 claims necessarily imply the invalidity of a challenged

---

[10] In fact, Perry includes "Brady Disclosures/Pretrial Disclosures" as part of the subheading for
Count IB, though he omits this language in the Proposed Second Amended Complaint.
[Amended Complaint at 20; see Proposed Second Amended Complaint at 20].

conviction in the trial (or plea) in which the Brady violation occurred because the remedy for a Brady violation is vacatur of the judgment of conviction and a new trial.  Thus, a Brady claim is not cognizable under § 1983 unless the challenged conviction has been invalidated." (internal citations and quotation marks omitted)).

Perry himself admits that he "would not have pled guilty had Kady's prosecution been properly pursued, that inculpatory evidence of Kady's crimes been preserved, [and had] the promises/inducements/rewards offered to Kady and others been disclosed"[11] [Amended Complaint at ¶ 114], which speaks directly to the principle underlying Heck—that a "judgment in favor of the plaintiff [on a Section 1983 claim] would undermine the validity of that plaintiff's conviction," Dew v. City of Boston, 405 F. Supp. 3d 294, 302 (D. Mass. 2019).  Even if Perry did not include this admission in his pleadings—as he does not in the Proposed Second Amended Complaint—his due process claim does not survive Heck scrutiny.  Brady requires the government to disclose any exculpatory evidence that is "material either to guilt or to punishment," and information is "material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." United States v. Rivera-Hernández, 497 F.3d 71, 79 (1st Cir. 2007).  Thus, the only way Perry could succeed on his due process claim based on the destruction of the Kady evidence would be to negate the validity of his guilty pleas.  See Dew, 405 F. Supp. 3d at 302.  Perry has not averred that his conviction has been invalidated.  Accordingly, Heck bars Perry's Fourteenth Amendment due process claim, which is brought pursuant to Section 1983.

---

[11] Perry claims that he learned all the details of the Kady prosecution no later than July 26, 2018, and most by May 8, 2018.  He pleaded guilty to thirty-four criminal charges in October 2019. Thus, Perry did know of the acts alleged, and he still pleaded guilty.

Perry's Proposed Second Amended Complaint does not change this conclusion.  In the Second Amended Complaint, Perry omits that he "would not have pled guilty" had the evidence in the Kady proceedings been preserved.  [See Amended Complaint at ¶ 113].  He also omits his reference to "Brady Disclosures."  [See id. at 20].  These omissions do not save his claim.  The facts alleged are the same.  Despite Perry's attempt to disguise his claim as something else, it remains, in substance, an alleged Brady violation.  Therefore, Perry's due process claim, as presented in the Proposed Second Amended Complaint, is futile.[12]

### C.  Count IB:  Equal Protection (Johnson, McHugh, Fitzgerald, and Halloran)

Perry adds a cursory reference to the "Equal Protection Clause" in his Fourteenth Amendment claim in his Proposed Second Amended Complaint.  [See Proposed Second Amended Complaint at 20].  He alleges "intentional and discriminatory refusal to protect Perry's civil rights, including the right to equal protection under the law, vis-à-vis Kady, for the crimes Kady committed against Perry."  [Id. at ¶ 132].  This claim is futile.

Perry has failed to state a violation of the Equal Protection Clause.  For this claim to survive a motion to dismiss, Perry would need to allege that (1) "compared with others similarly situated, [he] was selectively treated," and (2) "such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  Rubinovitz v. Rogato, 60 F.3d 906, 909-10 (1st Cir. 1995) (citation omitted).  He has done neither.  The Proposed

---

[12] Because the Court has determined that the statute of limitations and Heck doctrine bar Perry's Fourteenth Amendment claim, it need not address the qualified immunity defenses raised by Johnson, Ross, and Louie.

Second Amended Complaint points to no person or class of persons similarly situated. It also fails to allege any impermissible considerations underlying any selective treatment.[13]

Even if the Court reads Perry's equal protection language as a "class-of-one" claim, he has failed to state a claim for relief. A class-of-one equal protection claim is one "in which the plaintiffs do not claim membership in a class or group, but assert that the defendants impermissibly singled them out for unfavorable treatment." Freeman v. Town of Hudson, 849 F. Supp. 2d 138, 150 (D. Mass. 2012) (citing SBT Holdings, LLC. v. Town of Westminster, 547 F.3d 28, 33 (1st Cir. 2008)). A class-of-one claim "is cognizable when—and only when—a plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." SBT Holdings, 547 F.3d at 34 (citation and internal quotation marks omitted). A finding that the others are "similarly situated" depends on whether "a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." Freeman, 849 F. Supp. 2d 150-51. Perry references Kady as the only comparator, and he has failed to show they were "roughly equivalent" and "similarly situated." Perry and Kady were charged with vastly different crimes—in number and in substance. Moreover, Perry does not allege that he provided the RPD with any information that could be used in another's criminal investigation, nor that he could otherwise serve as a cooperating witness as Kady apparently did. These differences alone thwart Perry's class-of-one claim. See Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013)

---

[13] Perry states in his Reply to the Reading Defendants' Opposition to his Motion to Amend that the "class" of similarly situated persons is "those suffering home invasions or comparable serious crimes in the Town of Reading." [Dkt. 41 at 4]. There are multiple issues with this argument. First, Perry does not state this "class" in the Proposed Second Amended Complaint. Second, Perry still otherwise fails to allege sufficient facts establishing an equal protection violation.

(noting that class-of-one claims "require an extremely high degree of similarity" between the plaintiffs and the persons to whom they compare themselves (citations and internal quotation marks omitted)).  As such, the Fourteenth Amendment equal protection claim in Perry's Proposed Second Amended Complaint is futile.

### D.  Count IC:  Inadequate Training, Supervision, and Policies (Town of Reading and Fitzgerald)

Perry alleges that the Town of Reading failed "as a matter of policy or custom, to train, supervise and or [sic] adopt a needed policy with respect to the handling of and/or destruction of evidence, searches conducted by the police, and conflicts created by dual or multiple roles occupied by police in prosecuting/presenting crimes of victims while investigating crimes alleged to have been committed by said victims," and that Fitzgerald acted "in a conflicting role and intentionally failed to protect Perry's rights with respect to the crimes committed by Kady." [Amended Complaint at ¶¶ 137, 139; Proposed Second Amended Complaint at ¶¶ 137, 139]. This claim, brought pursuant to Section 1983, is based on the facts and alleged constitutional violations discussed above.  As such, it must be dismissed as barred by the statute of limitations and Heck doctrine.  See Dew, 405 F. Supp. 3d at 303 ("Municipal liability may only be imposed when there are 'underlying, identifiable constitutional violations' that are 'attributable to official municipal policy.'  In other words, a constitutional violation is an element of a [Section 1983] Monell claim.  As discussed above, successfully proving such a violation in this case would implicate the validity of Dew's conviction.  Therefore, even if Dew set forth a policy that caused the alleged constitutional violations, Dew's Monell claim would still be barred by Heck." (citing Kennedy v. Town of Billerica, 617 F.3d 520, 531 (1st Cir. 2010))).

### E.  Count II: State Law Claims

Perry also brings a claim for intentional infliction of emotional distress [Amended Complaint at ¶¶ 140-43] and briefly mentions Article 14 of the Massachusetts Declaration of Rights [id. at ¶ 118].  Because the Court dismisses Perry's federal claims in the Amended Complaint and finds that Perry's federal claims as presented in the Proposed Second Amended Complaint are futile, the Court also dismisses Perry's state law claims and denies his Motion to Amend as to the proposed state law claims for lack of jurisdiction.  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); see Dew, 405 F. Supp. 3d at 304.

## IV.    Conclusion

For the foregoing reasons, the Reading Defendants' Motion to Dismiss [Dkt. 20] is **GRANTED**; Johnson's Motion to Dismiss [Dkt. 50] is **GRANTED**; Ross's Motion to Dismiss [Dkt. 52] is **GRANTED**; Louie's Motion to Dismiss [Dkt. 55] is **GRANTED**; and Perry's Motion to Amend [Dkt. 27] is **DENIED**.

**SO ORDERED.**

Dated: June 21, 2022                                   /s/ Angel Kelley
                                                       Hon. Angel Kelley
                                                       United States District Judge